United States Courts
Southern District of Texas
FILED

NOV 17 2025

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LYDIA HARRIS,
Plaintiff,

v.

UNIVERSAL MUSIC GROUP; INTERSCOPE
RECORDS; LUCIAN GRAINGE; JIMMY
IOVINE; DRR LLC (a/k/a SNOOP DOGG);
DERMOT GIVENS; MARION KNIGHT;
MICKEY SHAPIRO; ALAN GRUNBLATT;
DAVID COHEN; TIME WARNER INC.; and
WARNER MUSIC GROUP CORP., et al
Defendants.

Civil Action No. 25 CV 5515

## INTRODUCTION

1. This civil action arises from a twenty-year pattern of fraudulent concealment, obstruction, racketeering activity, and coordinated enterprise conduct executed by powerful music-industry insiders, corporate entities, attorneys, and affiliated agents who conspired to prevent Plaintiff **Lydia Harris** from enforcing her lawful California state-court judgment and from obtaining the proceeds, royalties, and ownership interests to which she has been entitled since 2002.

2. Defendants—including **Universal Music Group, Inc. ("UMG")**, **Interscope Records**, **Lucian Grainge, Jimmy Iovine, DRR LLC (a/k/a "Snoop Dogg's Death Row")**, **Calvin Broadus (p/k/a Snoop Dogg), Dermot Givens, Marion "Suge" Knight, Mickey Shapiro, Alan Grunblatt, David Cohen, Time Warner Inc., Warner Music Group Corp.**, and **Conquest Media Group LLC**—participated in a coordinated enterprise to obstruct, delay, and ultimately eliminate Plaintiff's right to recover tens of millions of dollars arising from her co-ownership of Death Row Records and her legally adjudicated judgment.

1

3. The earliest fraudulent acts involved extracting a prison-house "release" from Michael "Harry-O" Harris while he was incarcerated, obtained by attorney **Mickey Shapiro** under circumstances that were inherently coercive and misleading, and then misused—through Defendants **Jimmy Iovine** and **David Cohen**—to mislead the Los Angeles Superior Court into granting a 2002 summary judgment that wrongfully dismissed insider defendants.
4. After 2002, Defendants continued their coordinated efforts by executing a series of fraudulent transfers, insider agreements, bankruptcy manipulations, concealed acquisitions, licensing deals, and corporate restructurings designed to frustrate Plaintiff's recovery. This conduct included, but was not limited to: (a) the 2006–2009 **Knight bankruptcy scheme** and sudden Chapter 7 conversion; (b) the 2009 **WideAwake** transfer; (c) subsequent **eOne / Hasbro / MNRK / Blackstone** succession transactions; (d) a 2008–2009 effort falsely asserting that **Conquest Media Group LLC** held rights or negotiation authority over Plaintiff's judgment; (e) the **October 28, 2021** unauthorized motion filed by **Dermot Givens** to reopen Plaintiff's bankruptcy; (f) the **November 30, 2021 ZoomGov** hearing targeting Plaintiff while she resided in Texas; and (g) the 2022–2023 rebranding and commercialization of the Death Row catalog through **DRR LLC** and **Calvin Broadus**.
5. Each Defendant knowingly participated in or aided this enterprise, causing Plaintiff significant financial harm, emotional distress, and loss of rights—injuries which have been felt primarily in **Texas**, where Plaintiff has resided during the most recent and impactful RICO predicate acts.
6. This action seeks redress under **RICO (18 U.S.C. §§ 1962(c) and (d))**, as well as damages and equitable relief for **fraud, fraudulent concealment, civil conspiracy, declaratory relief** under 28 U.S.C. § 2201, and the establishment of a **constructive trust** over all assets, proceeds, royalties, and property interests wrongfully withheld.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction pursuant to **28 U.S.C. § 1331** because this action arises under the laws of the United States, including the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968.
8. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to **28 U.S.C. § 1367**, as they arise from the same nucleus of operative facts underlying Plaintiff's federal RICO claims.
9. Personal jurisdiction over all Defendants is proper because each has purposefully directed acts toward the State of Texas, engaged in interstate commercial activity affecting Texas, transmitted fraudulent communications into Texas, or committed predicate acts whose harmful effects were suffered by Plaintiff **while domiciled in Texas**.
10. Defendant **Dermot Givens** established minimum contacts with Texas through his unauthorized filing of a motion to reopen Plaintiff's bankruptcy case on or about **October 28, 2021**, and through his direct participation in a **ZoomGov hearing on November 30, 2021**, wherein testimony and arguments were directed at Plaintiff while she resided in Texas.
11. Defendants **Jimmy Iovine, Lucian Grainge, David Cohen, Mickey Shapiro, Alan Grunblatt, UMG, Interscope, Time Warner Inc., Warner Music Group Corp., Conquest Media Group LLC, DRR LLC,** and **Calvin Broadus** engaged in continuous interstate commercial activity, including distribution, streaming, licensing, corporate transfers, and related communications, with significant revenues and effects in Texas. RICO's nationwide service provision, **18 U.S.C. § 1965(b)**, further supports this Court's exercise of jurisdiction.
12. Venue is proper in this district under **28 U.S.C. § 1391(b)** because (a) a substantial part of the events or omissions giving rise to the claims occurred in this district; (b) Plaintiff resides in this district; and (c) numerous racketeering communications, including emails, phone calls, and interstate coordination relating to the concealment of Plaintiff's judgment, were directed into this district.
13. Venue is also proper under **18 U.S.C. § 1965(a)–(b)** because the interests of justice require a single forum capable of exercising jurisdiction over all enterprise participants, and because Plaintiff's property-related injuries occurred in Texas.

## PARTIES

14. **Plaintiff Lydia Harris** ("Plaintiff") is an individual residing in Sugar Land, Texas. She is a co-founder and former co-owner of Death Row Records and the prevailing party in a California state-court judgment entered in or about 2002 (the "Harris Judgment"), which Defendants have collectively and continuously obstructed through a coordinated enterprise of fraud, concealment, and wrongful transfers.

15. **Universal Music Group, Inc. ("UMG")** is a multinational music corporation engaged in interstate commerce, with its principal place of business in California. UMG participated in the enterprise through distribution agreements, insider coordination, concealment of royalty and licensing data, and the suppression of Plaintiff's ownership interests relating to Death Row assets.

16. **Interscope Records** is a major music label headquartered in California and operated under the UMG corporate umbrella. Interscope, under the direction of Defendants **Jimmy Iovine** and **David Cohen**, coordinated efforts to utilize the fraudulent "release" associated with Michael Harris to support the unlawful dismissal of insider defendants in 2002 and to obstruct Plaintiff's financial recovery thereafter.

17. **Lucian Grainge** is an individual residing in California and serves as Chairman and CEO of UMG. Grainge oversaw, approved, or materially benefited from the enterprise's exploitation and commercialization of Death Row intellectual property, all while knowing or having reason to know of Plaintiff's unresolved ownership rights and adjudicated judgment.

18. **Jimmy Iovine** is an individual residing in California and a co-founder and former executive of Interscope Records and a senior figure within UMG's corporate structure. Iovine played a direct role in orchestrating the use of the prison-house "release" attributed to Michael Harris and in coordinating corporate strategies to conceal Plaintiff's ownership interests.

19. **David Cohen** is an individual who served in executive roles at Time Warner and/or Interscope and was directly involved in asset structuring, catalog valuation, and corporate

coordination related to Death Row properties. Cohen participated in both the 2002 summary judgment phase and later corporate transitions.

20. **DRR LLC (a/k/a "Snoop Dogg's Death Row")** is a Delaware limited liability company doing business nationwide, including in Texas. DRR LLC acquired or claimed to acquire assets associated with Death Row Records during the 2022–2023 commercialization period, continuing the enterprise's concealment of Plaintiff's ownership claims.

21. **Calvin Broadus** (professionally known as "Snoop Dogg") is an individual residing in California and the principal figure behind DRR LLC. Broadus knowingly acquired and commercially exploited Death Row assets through DRR LLC despite actual or constructive knowledge of Plaintiff's judgment, legal claims, and ownership rights.

22. **Dermot Givens** is an attorney residing in California. On or about **October 28, 2021**, he filed an unauthorized motion to reopen Plaintiff's bankruptcy case in the Central District of California, falsely implying authority to act on Plaintiff's behalf, and subsequently participated in a **ZoomGov hearing on November 30, 2021**, at which he advanced arguments adverse to Plaintiff while she resided in Texas.

23. **Marion "Suge" Knight** is an incarcerated individual and former executive of Death Row Records who filed for bankruptcy protection in 2006. Knight's filings, refusal to provide discovery, and strategic conversion from Chapter 11 to Chapter 7 were executed in concert with enterprise members to frustrate Plaintiff's enforcement efforts and to shield Death Row assets from her judgment.

24. **Mickey Shapiro** is an attorney residing in California. Shapiro personally visited Michael Harris in prison to obtain the signature on a purported "release" that Defendants later used to mislead the California Superior Court in 2002 and secure a summary judgment that wrongfully dismissed insider defendants.

25. **Alan Grunblatt** is an executive formerly associated with **Entertainment One U.S. LP ("eOne")** and related entities. Grunblatt participated in the continued exploitation of Death Row assets during corporate restructurings, including the WideAwake transaction and later MNRK transitions, all while withholding material information about Plaintiff's property interests.

26. **Time Warner Inc.** is a foreign corporation engaged in interstate commerce, which held interests relevant to Death Row properties during critical periods of concealment and

restructuring. Time Warner executives, including Defendant David Cohen, facilitated and benefited from enterprise activities related to Death Row.

27. **Warner Music Group Corp. ("WMG")** is a global music company engaged in interstate commerce and directly connected through executive alignment, licensing frameworks, and corporate transactions related to the Death Row catalog and its monetization.

28. **Conquest Media Group LLC** is a limited liability company that emerged in the 2008–2009 bankruptcy administration period as a purported holder of rights or negotiation authority over Plaintiff's judgment—representations later rescinded and alleged herein to have been fraudulent and part of the enterprise's concealment efforts.

29. Plaintiff is unaware of the true names and capacities of any additional persons or entities who may have participated in the enterprise and reserves the right to amend this Complaint upon discovery of their identities.

## FACTUAL ALLEGATIONS

### A. The 2001–2002 Fraudulent "Release" Scheme

30. In or around 2001–2002, Defendants **Jimmy Iovine, David Cohen,** and **Mickey Shapiro** orchestrated the procurement of a purported "release" from Michael "Harry-O" Harris while he was incarcerated as a convicted felon. Michael Harris was not in a position to lawfully release Plaintiff's individual, adjudicated or adjudicable rights and interests.

31. Defendant **Mickey Shapiro** personally visited Michael Harris in prison to obtain his signature on a purported "release" document, under circumstances that were inherently coercive and misleading. Defendants intended from the outset to misrepresent this document to the California Superior Court as if it were a valid, binding waiver of Plaintiff's claims.

32. Defendants **Iovine, Cohen,** and Shapiro thereafter caused this prison-house "release" to be submitted in support of their 2002 motion for summary judgment in Los Angeles

6

Superior Court, falsely suggesting that Plaintiff's claims had been relinquished or extinguished.

33. The California Superior Court relied on the misrepresented "release" and related filings to issue a **2002 summary judgment order** dismissing critical insider defendants. That order, obtained through fraud, later became a foundational instrument for Defendants' long-term scheme to conceal assets and defeat Plaintiff's judgment.

34. **Conquest Media Group LLC** played no role in the 2001–2002 release scheme and did not emerge in relation to the enterprise's conduct until the 2008–2009 bankruptcy sales period, as described below.

## B. 2006–2009: Knight's Bankruptcy and the Sudden Chapter 7 Conversion

35. In 2006, Defendant **Marion "Suge" Knight** filed for bankruptcy protection, triggering an automatic stay that further interfered with Plaintiff's enforcement efforts concerning her judgment and Death Row-related claims.

36. During the bankruptcy proceedings, Knight refused to cooperate fully with discovery and disclosure obligations, thereby preventing Plaintiff and the courts from obtaining a complete and accurate accounting of Death Row assets, revenue streams, and contractual rights.

37. The sudden conversion of Knight's bankruptcy case from Chapter 11 to Chapter 7 was executed in coordination with enterprise members to ensure that Death Row assets could be transferred and sold through a trustee-administered Section 363 process without Plaintiff's meaningful participation or knowledge.

38. Corporate insiders, including entities aligned with **UMG**, **Interscope**, and later **eOne** and **WideAwake**, were positioned to benefit from a bankruptcy sale process tainted by nondisclosure, insider communications, and the lack of proper recognition of Plaintiff's judgment.

39. The resulting **sale to WideAwake** around 2009 was executed without transparency to Plaintiff, without acknowledgment of her judgment, and without providing her a fair opportunity to assert her interest or object, constituting a fraudulent transfer designed to keep Death Row-related ownership and revenues beyond her reach.

## C. 2008–2019: WideAwake, eOne, MNRK, and the Conquest / Trustee Neilson Misrepresentations

40. After the 2009 transaction, Death Row's catalog and related assets passed through a sequence of corporate entities, including **WideAwake, eOne, Hasbro,** and eventually **MNRK Music Group**, under the control or financial backing of **Blackstone**. Each transition was structured and executed without acknowledging Plaintiff's established judgment and without disclosing her ownership rights.
41. During the 2008–2009 bankruptcy administration, Defendant **Conquest Media Group LLC** was falsely presented—through statements, filings, or representations attributed to the federal bankruptcy trustee, **Todd Neilson**—as an entity that had "acquired" or possessed rights to negotiate or settle Plaintiff's 2002 state-court judgment.
42. These alleged judgment-related rights claimed by Conquest were later **rescinded,** confirming that the representation of Conquest as a holder of Plaintiff's judgment rights or negotiation authority was false when made. The assertion of Conquest's alleged position was used to justify, legitimize, or smooth the path for Death Row asset sales while sidelining Plaintiff.
43. The fraudulent claim that Conquest controlled or spoke for Plaintiff's judgment supported the continuation of enterprise concealment by suggesting to courts and counterparties that Plaintiff's rights had either been resolved or subordinated, when in truth Plaintiff had not been meaningfully included and did not consent.
44. Defendants **Alan Grunblatt, UMG, eOne, MNRK,** and other insiders continued to profit from the Death Row catalog while affirmatively concealing licensing agreements, streaming contracts, royalty statements, and asset valuations from Plaintiff and from courts that should have received complete information.

## D. 2021–2025: Renewed Obstruction and Texas-Directed Conduct

8

45. By 2021, Plaintiff had reestablished residence in Texas and resumed active efforts to enforce the Harris Judgment and to investigate the enterprise's long-running concealment and transfers.

46. On or about **October 28, 2021**, Defendant **Dermot Givens** filed an unauthorized motion to reopen Plaintiff's previously closed personal bankruptcy case in the Central District of California, falsely implying authority to represent Plaintiff and seeking to involve the bankruptcy trustee in control over her judgment rights.

47. On **November 30, 2021**, Givens appeared in a federally administered **ZoomGov hearing** before Judge Geraldine Mund, during which he advanced positions adverse to Plaintiff and supportive of the enterprise's objectives, while Plaintiff resided in Texas and was directly affected by those proceedings.

48. These unauthorized acts were part of the same enterprise that began in 2001–2002; Defendants continued to use fraudulent filings, misrepresentations of authority, and federal court procedures to block Plaintiff's access to her judgment and to steer control over related rights to parties aligned with the enterprise.

49. Meanwhile, by 2022, **Calvin Broadus** and **DRR LLC** announced, claimed, or otherwise held themselves out as the owners and controllers of the Death Row catalog and brand, and executed streaming and licensing agreements despite actual or constructive knowledge of Plaintiff's prior adjudicated interests and the Harris Judgment.

50. Digital revenue, streaming royalties, licensing payments, and catalog monetization profits were generated from nationwide markets, including revenues sourced from Texas consumers, thereby creating a direct nexus between Defendants' racketeering proceeds and this forum.

51. From 2022 through 2025, Defendants, individually and collectively, continued coordinated concealment through nondisclosure of catalog ownership, withholding of contracts and financial records, and the transmission of incomplete or misleading information designed to conceal the true status of Death Row assets and Plaintiff's rights.

**E. Continuity of the Enterprise and Texas Nexus**

52. The enterprise's conduct demonstrates a clear and unbroken pattern comprising: (a) the 2001–2002 fraudulent "release" scheme; (b) the 2006–2009 Knight bankruptcy manipulation and sudden Chapter 7 conversion; (c) the 2008–2009 Conquest/Trustee Neilson misrepresentations and the WideAwake sale; (d) the 2009–2019 WideAwake, eOne, Hasbro, and MNRK asset transitions; (e) the 2021–2025 Texas-targeted unauthorized bankruptcy reopening and ZoomGov hearing; and (f) the 2022–2025 DRR LLC commercialization and continued concealment.
53. Each act furthered a single, continuous purpose: **to obstruct Plaintiff's recovery of her rightful ownership and judgment interests and to capture the commercial value of Death Row Records for Defendants' own benefit.**
54. The pattern of racketeering activity—including wire fraud, mail fraud, bankruptcy fraud, obstruction of justice, and fraudulent concealment—was ongoing, intentional, and caused substantial injury to Plaintiff's property and rights, primarily in Texas.

At the end of **Part I**, add your standard signature block:

Respectfully submitted,

*/s/ Lydia Harris/*

Lydia Harris, Plaintiff, Pro Se
1206 Misty Lake Ct
Sugar Land, TX 77498
Phone: 832-799-1547
Email: justlydia1@yahoo.com

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

LYDIA HARRIS,

Plaintiff,

v.

UNIVERSAL MUSIC GROUP; INTERSCOPE
RECORDS; LUCIAN GRAINGE; JIMMY
IOVINE; DRR LLC (a/k/a SNOOP DOGG);
DERMOT GIVENS; MARION KNIGHT;
MICKEY SHAPIRO; ALAN GRUNBLATT;
DAVID COHEN; TIME WARNER INC.; and
WARNER MUSIC GROUP CORP.,

Defendants.

Civil Action No. _____

Hon. David Hittner

---

## COMPLAINT – PART II
### (RICO CLAIMS, FRAUD, CONSTRUCTIVE TRUST, AND PRAYER FOR RELIEF)

## RICO CLAIM

*(18 U.S.C. § 1962(c))*

55. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.
56. At all relevant times, Defendants formed an **association-in-fact enterprise** ("the Enterprise") within the meaning of 18 U.S.C. § 1961(4), consisting of:
    (a) Universal Music Group, Inc.;
    (b) Interscope Records;

(c) Lucian Grainge;

(d) Jimmy Iovine;

(e) Dermot Givens;

(f) Marion "Suge" Knight;

(g) Mickey Shapiro;

(h) Alan Grunblatt;

(i) David Cohen;

(j) Time Warner Inc.;

(k) Warner Music Group Corp.;

(l) Conquest Media Group LLC;

(m) DRR LLC; and

(n) Calvin Broadus.

57. The Enterprise had a **common purpose**: to obstruct Plaintiff's recovery of her adjudicated judgment, conceal the ownership and profits of Death Row Records, transfer assets beyond her reach, and unjustly enrich Enterprise members through continued exploitation of Death Row intellectual property, royalties, licensing rights, digital streaming revenues, and catalog valuations.

58. The Enterprise engaged in and affected **interstate commerce**, including music distribution, digital streaming, licensing agreements, corporate transfers, bankruptcy filings, wire communications, ZoomGov hearings, and interstate movement of funds and assets.

59. Each Defendant **conducted or participated**, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity, including but not limited to:

- Wire fraud (18 U.S.C. § 1343);
- Mail fraud (18 U.S.C. § 1341);
- Bankruptcy fraud (18 U.S.C. § 152);
- Obstruction of justice (18 U.S.C. §§ 1503, 1505, 1512, 1519); and
- Interstate transportation and concealment of property derived from unlawful activity.

60. The pattern of racketeering activity began no later than **2001–2002**, with the fraudulent prison-house "release" used to obtain the 2002 summary judgment, and continued

through at least **2025**, encompassing Knight's bankruptcy scheme, the WideAwake/eOne/MNRK transitions, the Conquest/Trustee Neilson misrepresentations, the 2021 unauthorized bankruptcy reopening, the November 30, 2021 ZoomGov hearing, and the 2022–2025 DRR LLC commercialization.

61. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff has suffered injuries to her property, including but not limited to the deprivation of royalties, catalog equity, licensing revenue, and the value of her judgment and co-ownership interest. These injuries were experienced primarily in Texas, where Plaintiff resides.
62. Plaintiff is therefore entitled to recover **treble damages**, attorney's fees, and costs pursuant to **18 U.S.C. § 1964(c)**.

## RICO CONSPIRACY

*(18 U.S.C. § 1962(d))*

63. Plaintiff realleges all preceding paragraphs as though fully set forth herein.
64. Defendants knowingly and willfully **conspired** to violate 18 U.S.C. § 1962(c) by agreeing to participate in and further the affairs of the Enterprise through a pattern of racketeering activity as described above.
65. Each Defendant agreed to facilitate, support, or promote the Enterprise's unlawful objectives, including the obstruction of Plaintiff's judgment rights, concealment of Death Row assets, manipulation of bankruptcy proceedings, and exploitation of the Death Row catalog for their own financial gain.
66. Defendants further agreed to the commission of multiple predicate acts, including wire fraud, mail fraud, bankruptcy fraud, obstruction of justice, and fraudulent concealment, all of which were reasonably foreseeable to each member of the Enterprise.
67. Defendant **Dermot Givens**, through his unauthorized filings on or about **October 28, 2021** and advocacy during the **November 30, 2021 ZoomGov hearing**, furthered the objectives of the conspiracy by attempting to place Plaintiff's judgment under trustee control based on false pretenses and misrepresented authority.

13

68. Defendants **Jimmy Iovine** and **David Cohen** coordinated with others—including Shapiro and corporate insiders—to exploit the fraudulent 2002 summary judgment order and to support later corporate transfers, thereby entrenching the enterprise's control over Death Row assets.
69. The conspiracy continued through the WideAwake transaction, the eOne/Hasbro/MNRK succession, and the DRR LLC 2022–2025 commercialization, all of which furthered the Enterprise's objective of preventing Plaintiff from recovering her adjudicated rights and ownership interests.
70. As a direct and foreseeable result of Defendants' conspiracy to violate RICO, Plaintiff suffered injury to her business and property, including the continuing deprivation of her judgment value, royalties, and ownership interests.

## FRAUD

71. Plaintiff realleges all preceding paragraphs.
72. Defendants made false representations of material fact to courts, trustees, corporate counterparties, and to Plaintiff, including but not limited to:
    (a) that Plaintiff's rights had been released or surrendered via the coerced "release" attributed to Michael Harris;
    (b) that Conquest Media Group LLC had legitimately acquired or held rights to negotiate Plaintiff's judgment;
    (c) that bankruptcy filings contained full and accurate disclosures of Death Row assets; and
    (d) that certain Defendants possessed lawful authority to act on Plaintiff's behalf in bankruptcy proceedings.
73. Defendants knew these representations were false at the time they were made and intended for courts, trustees, and other parties to rely upon them.
74. Plaintiff reasonably relied on the integrity of court processes, trustee representations, and corporate disclosures and was harmed as a direct result of these misrepresentations.
75. Plaintiff has suffered substantial damages, including lost royalties, lost catalog value, lost enforcement opportunities, and related financial harm.

## FRAUDULENT CONCEALMENT

76. Plaintiff realleges all preceding paragraphs.
77. Defendants engaged in long-term, systematic **concealment** of material facts—including asset sales, catalog transfers, licensing revenues, bankruptcy maneuvering, corporate restructurings, and insider agreements—designed to prevent Plaintiff from discovering the true nature and value of her ownership interests and judgment rights.
78. Concealment included affirmative acts such as:
    (a) nondisclosure of licensing contracts and digital streaming revenue;
    (b) suppression of financial records in bankruptcy and corporate transactions;
    (c) misrepresentations about Conquest's alleged judgment rights; and
    (d) withholding information from Plaintiff despite knowing her claims and adjudicated rights.
79. Defendants owed duties arising from court orders, fiduciary obligations of insiders, statutory disclosure requirements, and their knowledge of Plaintiff's established judgment.
80. Defendants' concealment prevented Plaintiff from timely discovering the full scope of their fraud and enterprise conduct, thereby tolling any applicable statute of limitations and causing ongoing damages.

## CIVIL CONSPIRACY

81. Plaintiff realleges all preceding paragraphs.
82. Defendants combined, agreed, and acted in concert to commit fraud, fraudulent concealment, and racketeering acts, all for the purpose of injuring Plaintiff and benefiting themselves.
83. Each Defendant committed one or more overt acts in furtherance of the conspiracy, including but not limited to fraudulent filings, misrepresentations to courts and trustees, wrongful transfers, and concealment of financial data.
84. As a direct and proximate result, Plaintiff suffered injury in Texas, including the loss of royalties, catalog value, enforcement rights, and related monetary and property interests.

## DECLARATORY RELIEF

*(28 U.S.C. § 2201)*

85. Plaintiff realleges all preceding paragraphs.
86. An actual, justiciable controversy exists regarding Plaintiff's ownership interests, judgment rights, and entitlement to assets, profits, and royalties derived from the Death Row catalog and related intellectual property.
87. Plaintiff seeks a declaratory judgment that:
    (a) the 2002 "release" associated with Michael Harris was fraudulent and void;
    (b) Plaintiff's judgment remains valid, enforceable, and not satisfied;
    (c) subsequent transfers and commercialization of Death Row assets were subject to, and did not extinguish, Plaintiff's rights; and
    (d) Defendants' concealment and enterprise conduct were unlawful.

## CONSTRUCTIVE TRUST

88. Plaintiff realleges all preceding paragraphs.
89. Defendants acquired, transferred, concealed, or profited from property, contracts, revenue streams, and other assets derived from Death Row's catalog and intellectual property to which Plaintiff holds an underlying ownership and judgment interest.
90. These assets and proceeds were obtained and retained through fraud, concealment, abuse of process, and racketeering, making it inequitable for Defendants to keep them.
91. Equity requires the imposition of a **constructive trust** over all such assets, including but not limited to:
    (a) master recordings and catalog rights;
    (b) licensing and synchronization rights;
    (c) digital streaming and royalty revenues;
    (d) derivative property rights; and
    (e) all proceeds realized from the commercialization or transfer of Death Row intellectual property.

92. A constructive trust is necessary to prevent unjust enrichment and to restore to Plaintiff that which rightfully belongs to her.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment in her favor and against all Defendants, jointly and severally, and award her the following relief:

1. Treble damages under 18 U.S.C. § 1964(c) for Defendants' RICO violations;
2. Compensatory damages in an amount to be proven at trial;
3. Punitive damages for Defendants' willful, malicious, and fraudulent conduct;
4. Declaratory relief as set forth above;
5. Imposition of a constructive trust over all Death Row-related assets, revenues, and proceeds held or controlled by Defendants;
6. A full forensic accounting of all Death Row-related revenues, contracts, and transfers;
7. An order compelling production of all records and contracts relating to Death Row assets and revenues;
8. Pre-judgment and post-judgment interest as permitted by law;
9. Attorney's fees and costs pursuant to 18 U.S.C. § 1964(c) and applicable law; and
10. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Lydia Harris*

Lydia Harris, Plaintiff, Pro Se
1206 Misty Lake Ct
Sugar Land, TX 77498
Phone: 832-799-1547
Email: justlydia1@yahoo.com